**UNITED STATES v. UNITED STATES ALKALI EXPORT ASS'N, Inc., et al.**

District Court, S. D. New York.

Dec. 26, 1944.

Writ of Certiorari Granted March 5, 1945.

See 65 S.Ct. 715.

Herbert A. Berman and Manuel M. Gorman, Sp. Assts. to Atty. Gen., and Aute L. Carr and Bert C. Dedman, Sp. Attys., both of Washington, D. C. (Wendell Berge, Asst. Atty. Gen., of counsel), for plaintiff.

Cravath, Swaine & Moore, of New York City, for defendant United States Alkali Export Ass'n, Inc.

Leland Hazard, of Kansas City, Mo., for defendants Pittsburgh Plate Glass Co. Inc., and Southern Alkali Corporation.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for defendant Diamond Alkali Company, Inc.

Calvin A. Campbell, of Midland, Mich., for defendant Dow Chemical Co., Inc.

Robert T. McCracken, of Philadelphia, Pa., for defendant Pennsylvania Salt Manufacturing Co.

Lewis & Watkins, of Detroit, Mich., for defendant Wyandotte Chemicals Corporation.

Dwight, Harris, Koegel & Caskey, of New York City, for defendant Church & Dwight Co., Inc.

Sage, Gray, Todd & Sims, of New York City, for defendant Hooker Electrochemical Co. Inc.

Chadbourne, Wallace, Parke & Whiteside, of New York City, for defendant Mathieson Alkali Works, Inc.

Root, Clark, Buckner & Ballantine, of New York City, for defendant Niagara Alkali Co.

Wise, Corlett & Canfield, of New York City, for defendant Westvaco Chlorine Products Corporation, Inc.

Wm. Dwight Whitney, of New York City (Wm. Dwight Whitney, of New York City, and John Logan O'Donnell, of Washington, D. C., of counsel), for defendants Pittsburgh Plate Glass Co., Inc., Southern Alkali Corporation, Diamond Alkali Co., Inc., Dow Chemical Company, Inc., Pennsylvania Salt Manufacturing Co., and Wyandotte Chemicals Corporation.

COXE, District Judge.

This is a motion by a number of the defendants to dismiss the complaint for lack of jurisdiction over the subject matter of the action.

The action is for injunctive relief for alleged violation of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, in the sale of alkalis in interstate and foreign trade and commerce.

The defendants are: (1) Two incorporated export trade associations, (2) thirteen domestic corporations, all producers of alkalis in this country and members of one or the other of the defendant associations, and (3) a British corporation, which is the dominant producer of alkalis in Great Britain, together with its New York subsidiary.

The two defendant associations have filed with the Federal Trade Commission the papers required by the Webb-Pomerene Act, Act of April 10, 1918, c. 50, 40 Stat. 516, 15 U.S.C.A. § 61 et seq.

The sole ground of the motion is that under sections 2 and 5 of the Webb-Pomerene Act "exclusive jurisdiction is vested in the first instance in the Federal Trade Commission of the matters complained of in the complaint * * *."

The complaint charges that the defendants and four other corporations, not named as defendants but named as co-conspirators, have engaged in a combination and conspiracy to restrain interstate and foreign commerce in alkalis in violation of Section 1 of the Sherman Act. Two of the named co-conspirators are a Belgian corporation, alleged to be "the principal manufacturer of alkalis on the continent of Europe," and a German corporation, alleged to be "the most important manufacturer of alkalis in Germany." The terms of various contracts, agreements and understandings are described in considerable detail, and it is alleged that under these contracts, agreements and understandings foreign markets in alkalis were divided and allocated, export quotas were established, foreign prices were regulated and controlled, and competition in United States markets from foreign producers was eliminated. It is also alleged that concerted action was taken to stifle competition in United States export trade from independent domestic manufacturers. The effects of the alleged conspiracy are stated to have been to restrain trade within the United States, to restrain the export trade of domestic competitors of the defendants, artificially and intentionally to enhance and stabilize the prices of alkalis within the United States, and substantially to lessen competition within the United States.

The Webb-Pomerene Act was enacted in 1918 to legalize associations formed for the sole purpose of engaging in export trade. Section 2 exempts from the operation of the Sherman Act "an association entered into for the sole purpose of engaging in export trade and actually engaged solely in such export trade." It also exempts "an agreement made or act done in the course of export trade by such association." The proviso clauses of the section, however, considerably narrow the exemption so that it affords no immunity (1) when the association, agreement or act is in restraint of trade within the United States, or is in restraint of the export trade of any domestic competitor of the association, or (2) when the association enters into any agreement, understanding or conspiracy, or does any act which artificially or intentionally enhances or depresses prices within the United States, or which substantially lessens competition within the United States or otherwise restrains trade therein.

Section 5 of the Act is concerned with procedure, and contains three paragraphs. The first paragraph requires export associations to file with the Federal Trade Commission verified written statements containing specified information regarding their organization and activities. The second paragraph provides a special procedure under which the Commission is authorized to conduct an investigation when it has reason to believe (1) that an association, or any agreement made or act done by it, is in restraint of trade within the United States, or in restraint of the export trade of any domestic competitor of the association, or (2) that an association has entered into any agreement, understanding, or conspiracy, or done any act which artificially or intentionally enhances or depresses prices within the United States, or which substantially lessens competition within the United States or otherwise restrains trade therein. If, after investigation, the Commission concludes that the law has been violated, it may make recommendations to the association for the readjustment of its business. If the recommendations are not followed, the Commission is to refer its findings and recommendations to the Attorney General for such action as he may deem proper.

 Clearly, Section 2 of the Webb-Pomerene Act granted no immunity to the moving defendants for such a conspiracy as charged in the complaint. And the allegations of the complaint are to be accepted as true for the purposes of the motion. But it is said that Section 5 provides a special procedure which prevents the court from taking jurisdiction of the action until after the Federal Trade Commission has conducted an investigation and referred its findings and recommendations to the Attorney General. This same argument was considered by the Supreme Court in United States v. Borden Co., 308 U.S. 188, 203–206, 60 S.Ct. 182, 84 L.Ed. 181, with respect to the Capper-Volstead Act, 42 Stat. 388, 7 U.S.C.A. §§ 291, 292, and it was held that

the special procedure of that Act was merely an "auxiliary" procedure, and not in any way "a substitute for the provisions of the Sherman Act". 308 U.S. at page 206, 60 S.Ct. at page 191. This special procedure of the Capper-Volstead Act, with its provision for a hearing and judicial review, is far more comprehensive than that of the Webb-Pomerene Act, and the decision is controlling on the question presented by the motion. I hold, therefore, that the powers conferred on the Federal Trade Commission by Section 5 of the Webb-Pomerene Act are merely auxiliary, and do not in any way interfere with or prevent the maintenance of the present action.

The motion of the moving defendants to dismiss the complaint for lack of jurisdiction over the subject matter of the action is denied.