## UNITED STATES ALKALI EXPORT ASSOCIATION, INC. ET AL. *v.* UNITED STATES.

No. 1016.

Argued May 1, 2, 1945.—Decided May 21, 1945.

*Mr. Wm. Dwight Whitney,* with whom *Messrs. Leland Hazard, David A. Reed, Calvin A. Campbell, Robert T. McCracken, Ralph S. Harris, H. G. Hitchcock, H. Webster Stull, J. E. F. Wood, F. C. Lowthorp, Bruce Bromley, George S. Collins, Fred N. Oliver, Edward D. Lyman* and *Willard P. Scott* were on the brief, for petitioners.

*Assistant Attorney General Berge,* with whom *Assistant Solicitor General Cox, Messrs. Charles H. Weston* and *Herbert A. Berman* were on the brief, for the United States.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This is a suit in the District Court for Southern New York, brought by the United States under § 4 of the Sher-

man Antitrust Act, 15 U. S. C. § 4, to restrain violations of the Act. The defendants, who are petitioners here, are two incorporated export associations, thirteen domestic members of one or the other, and a British corporation and its American subsidiary, all of which are producers of alkalies. The bill of complaint alleges that petitioners are engaged in a conspiracy to eliminate exports of alkalies to the United States by the foreign members of the conspiracy; to restrict or eliminate exports of alkalies by domestic producers from the United States to many world markets; to prevent independent domestic producers from competing with petitioners, in the export of alkalies; to restrict their production of alkalies in the United States; and to fix prices of caustic soda in the United States, all in violation of § 1 of the Sherman Act, 15 U. S. C. § 1.

The district court denied, 58 F. Supp. 785, petitioners' motion to dismiss the complaint, made on the ground that exclusive jurisdiction of the matters charged in the complaint is vested in the first instance in the Federal Trade Commission, under §§ 1, 2, and 5 of the Webb-Pomerene Act of April 10, 1918, c. 50, 40 Stat. 516, 15 U. S. C. §§ 61, 62, 65. Petitioners then filed here petitions for certiorari under § 262 of the Judicial Code, 28 U. S. C. § 377, seeking review of the order of the district court denying the motion to dismiss.

The questions for decision are (1) whether the order of the district court, denying petitioners' motion to dismiss the complaint, may appropriately be reviewed here by writ of certiorari issued under § 262 of the Judicial Code and, if so, (2) whether §§ 1, 2, and 5 of the Webb-Pomerene Act confer primary jurisdiction on the Federal Trade Commission, exclusive of that of the district court, to pass upon alleged violations of the Sherman Act by export associations.

Section 4 of the Sherman Act invests the several district courts with jurisdiction to restrain violations of the Act;

and it imposes on district attorneys of the United States, under the direction of the Attorney General, the duty to institute suits in equity in their respective districts, to restrain such violations. But § 2 of the Webb-Pomerene Act exempts from the prohibitions of the Sherman Act, associations "entered into for the sole purpose of engaging in export trade and actually engaged solely in such export trade" and also any "agreement made or act done in the course of export trade by such association, provided such association, agreement, or act is not in restraint of trade within the United States, and is not in restraint of the export trade of any domestic competitors of such association." To this is added a second proviso "that such association does not, either in the United States or elsewhere, enter into any agreement, understanding, or conspiracy, or do any act which artificially or intentionally enhances or depresses prices within the United States of commodities of the class exported by such association, or which substantially lessens competition within the United States or otherwise restrains trade therein."

The first paragraph of § 5 of the Webb-Pomerene Act requires each association engaged solely in export trade to file with the Federal Trade Commission a statement giving information concerning its officers and stockholders or members, and its place of business, and a copy of its articles of incorporation or its contract of association; the association is required to refile annually such statements with suitable corrections, and to furnish such further specified information as the Commission may from time to time request. Section 5 further provides in its second paragraph that whenever the Commission shall have reason to believe that an export association is violating the Sherman Act in the ways excepted by the provisos of § 2 from its exemptions, the Commission shall conduct an investigation into the alleged violations. If "it shall conclude that the law has been violated, it may make to

such association recommendations for the readjustment
of its business, in order that it may thereafter maintain its
organization and management and conduct its business
in accordance with law." If the association fails to com-
ply with the recommendations of the Commission, it
"shall refer its findings and recommendations to the At-
torney General of the United States for such action
thereon as he may deem proper." [1]

Petitioners do not question the district court's rulings,
in denying their motion, that the complaint alleges vio-
lations of the Sherman Act, and that under its allegations
petitioners are not within any immunity from the Sher-
man Act secured by § 2 of the Webb-Pomerene Act. Their
sole contention on the merits is that § 5 of the latter Act,
by authorizing the proceedings before the Federal Trade
Commission, deprives the district courts of jurisdiction in
Sherman Act cases until the Commission has made its

---

[1] The second paragraph of § 5 of the Webb-Pomerene Act, with
which we are especially concerned, reads as follows:

"Whenever the Federal Trade Commission shall have reason to
believe that an association or any agreement made or act done by
such association is in restraint of trade within the United States or
in restraint of the export trade of any domestic competitor of such
association, or that an association either in the United States or else-
where has entered into any agreement, understanding, or conspiracy,
or done any act which artificially or intentionally enhances or depresses
prices within the United States of commodities of the class exported
by such association, or which substantially lessens competition within
the United States or otherwise restrains trade therein, it shall summon
such association, its officers, and agents to appear before it, and there-
after conduct an investigation into the alleged violations of law. Upon
investigation, if it shall conclude that the law has been violated, it
may make to such association recommendations for the readjustment
of its business, in order that it may thereafter maintain its organiza-
tion and management and conduct its business in accordance with
law. If such association fails to comply with the recommendations
of the Federal Trade Commission, said commission shall refer its
findings and recommendations to the Attorney General of the United
States for such action thereon as he may deem proper."

investigation and recommendations, the associations have failed to comply with them, and the Commission has referred its findings and recommendations to the Attorney General.

I

Petitioners argue that this Court may appropriately review the order of the district court by writ of certiorari, issued under § 262 of the Judicial Code. They point out that § 2 of the Expediting Act of February 11, 1903, as amended, 15 U. S. C. § 29, governing appeals in Sherman Act cases, makes no provision for appeals from interlocutory orders or judgments, and provides that "an appeal from the final decree of the district court will lie only to the Supreme Court." See *United States* v. *California Canneries,* 279 U. S. 553. But it is urged that the district court is deprived of its jurisdiction by § 5 of the Webb-Pomerene Act, until the Trade Commission has made the investigation and followed the further procedure outlined by § 5; that the assertion by the district court of its jurisdiction, without awaiting an investigation by the Commission, will entail protracted litigation and impose on the parties great expense before the error can be corrected on appeal from the final judgment to this Court. All this will be avoided, it is said, by awaiting action by the Commission. Hence petitioners insist that the case is appropriate for the exercise by this Court of its extraordinary power to review the order of the district court by writ of certiorari.

Section 262 of the Judicial Code provides that the Supreme Court, circuit courts of appeals and the district courts, "shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." Under § 262, this Court has power, in aid of its appellate jurisdiction, to review judgments and orders of the district courts by

resort to the common law writs of certiorari, mandamus and prohibition. *Whitney* v. *Dick,* 202 U. S. 132; *McClellan* v. *Carland,* 217 U. S. 268, and cases cited; *In re 620 Church Street Corp.,* 299 U. S. 24, 26, and cases cited; *Ex parte Peru,* 318 U. S. 578, and cases cited; *House* v. *Mayo,* 324 U. S. 42, and cases cited; compare *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21. These writs are granted or withheld in the sound discretion of the Court. See *Roche* v. *Evaporated Milk Assn., supra,* 25, and cases cited. In the usual case this Court will decline to issue a writ prior to review in the Circuit Court of Appeals, whether by ordinary appeal, *In re Tampa Suburban R. Co.,* 168 U. S. 583, 588, or by an extraordinary remedy, see *Ex parte Peru, supra,* 584. But where, as here, sole appellate jurisdiction lies in this Court, application for a common law writ in aid of appellate jurisdiction must be to this Court.

The traditional use of such writs both at common law and in the federal courts has been, in appropriate cases, to confine inferior courts to the exercise of their prescribed jurisdiction or to compel them to exercise their authority when it is their duty to do so. *In re Chetwood,* 165 U. S. 443, 462 (citing Tidd's Prac. *398, and Bac. Ab., Certiorari); *Whitney* v. *Dick, supra,* 139–140; *Ex parte Peru, supra,* 583, and cases cited.[2] It is evident that hardship is imposed on parties who are compelled to await the correction of an alleged error at an interlocutory stage by an appeal from a final judgment. But such hardship does not necessarily justify resort to certiorari or other of the extraordinary writs as a means of review. In such cases

---

[2] See also *Regina* v. *Yarrington,* 1 Salk. 406, 91 Eng. Rep. 353 (Q. B. 1710); *King* v. *Justices of the West Riding of Yorkshire,* 5 T. R. 629, 101 Eng. Rep. 352 (K. B. 1794); *King* v. *Justices of Somersetshire,* 5 Barn. & Cress. 816, 108 Eng. Rep. 303 (K. B. 1826); *King* v. *Judge Clements* [1932] 2 K. B. 535; *King* v. *Middlesex Justices* [1933] 1 K. B. 72.

appellate courts are reluctant to interfere with decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular course of appeal. *In re Tampa Suburban R. Co., supra; Ex parte Harding,* 219 U. S. 363, 369; *Roche* v. *Evaporated Milk Assn., supra,* 30–31, and cases cited; cf. *Stoll* v. *Gottlieb,* 305 U. S. 165; *Treinies* v. *Sunshine Mining Co.,* 308 U. S. 66. The writs may not be used as a substitute for an authorized appeal; and where, as here, the statutory scheme permits appellate review of interlocutory orders only on appeal from the final judgment, review by certiorari or other extraordinary writ is not permissible in the face of the plain indication of the legislative purpose to avoid piecemeal reviews. *Roche* v. *Evaporated Milk Assn., supra,* 30, and cases cited; and see *Cobbledick* v. *United States,* 309 U. S. 323.

But the present case is not the ordinary one of hardship resulting from overruling a plea in bar or denying a preliminary motion which, if well founded, would end the litigation on the merits—decisions which Congress, in the absence of other provisions for appeal, must have contemplated would, in the ordinary course, be reviewed on appeal from the final judgment. The questions now presented involve the propriety of the exercise, by the district court, of its equity jurisdiction, and an asserted conflict between its jurisdiction and that of an agency of Congress said to be charged with the duty of enforcing the antitrust laws in the circumstances of the present case. If petitioners' motion was well founded, its denial operated to thwart the asserted purpose of Congress to afford to export associations, which overstep the bounds of the granted immunity, opportunity, with the expert aid of the Trade Commission, to retrace their steps, without being subjected to the penalties of the law. Exercise of its jurisdiction by the district court would preclude the Commission from carrying out its asserted functions of investigation,

recommendation and report before any suit by the United States. This would be more than the mere denial of the right of a suitor such as Congress must have contemplated would be corrected by recourse to the prescribed appeal procedure. It would be a frustration of the functions which Congress has directed the Commission to perform and of the policy which Congress presumably sought to effectuate by their performance.

The hardship imposed on petitioners by a long postponed appellate review, coupled with the attendant infringement of the asserted Congressional policy of conferring primary jurisdiction on the Commission, together support the appeal to the discretion of this Court to exercise its power to review the ruling of the district court in advance of final judgment. The case is analogous to those in which this Court has, by writs issued under § 262, reviewed the action of district courts, alleged to be in excess of their authority, by which they have foreclosed the adjudication of rights or the protection of interests committed to the jurisdiction of a state officer or tribunal, see *In re Chetwood, supra; McClellan* v. *Carland, supra; Ex parte Metropolitan Water Co.,* 220 U. S. 539; *Ex parte Skinner & Eddy Corp.,* 265 U. S. 86; *Maryland* v. *Soper (No. 1),* 270 U. S. 9; *Ex parte Northern Pacific R. Co.,* 280 U. S. 142; *Colorado* v. *Symes,* 286 U. S. 510; or by which they have deprived a party of a trial by jury. *Ex parte Simons,* 247 U. S. 231; *Ex parte Peterson,* 253 U. S. 300, 305.

For these reasons we think the case is an appropriate one for review of the district court's order by certiorari, and we pass to the consideration of the merits.

## II

Petitioners do not deny that the allegations of the complaint are sufficient to charge violations of the Sherman Act not within the exemptions created by § 2 of the Webb-

Pomerene Act. The contention is that since the alleged violations are being committed by and on behalf of export associations which have conformed to § 5 of the latter Act, the authority of the United States to maintain the suit is suspended until the Federal Trade Commission has proceeded against the associations by way of investigation and, if found appropriate, by way of recommendations to them and reference of its findings to the Attorney General, as specified in § 5.

It is conceded that § 5 contains no explicit restriction on the authority of the United States to institute antitrust suits in the normal way, nor any explicit requirement that resort be had to the Commission prior to the institution of such an antitrust suit. Petitioners argue that this is to be implied from the structure of the Act, which first, by § 2, exempts from the Sherman Act certain activities of export associations, with specified exceptions; and then by the second paragraph of § 5, gives the Commission authority, in language substantially identical with that of the exceptions in § 2, to investigate such activities as continue to be violations of the Sherman Act. It is argued that Congress, by authorizing the Commission to investigate violations and in appropriate cases to report to the Attorney General any violations found, has expressed the purpose that the action by the Commission and the Attorney General should be consecutive and not concurrent.

It would follow that however strong the evidence, and however clear the violation of the Sherman Act, the Attorney General must await the action of the Commission, which may or may not undertake to proceed with the case, and that in any event the Attorney General and the courts must abide by the Commission's determination that there are no violations to report. During the twenty-eight years between the enactment of the Sherman Act and the passage of the Webb-Pomerene Act, the plenary authority and settled practice of the Department of Justice to

institute antitrust suits, without prior proceedings by other agencies, became firmly established. A *pro tanto* repeal of that authority, by conferring upon the Commission primary jurisdiction to determine when, if at all, an antitrust suit may appropriately be brought, would require a clear expression of that purpose by Congress. *United States* v. *Borden Co.*, 308 U. S. 188, 198–199, 203–206; see also *Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 456–457. The Webb-Pomerene Act, as we have said, contains no explicit indication to that end. Nor may such an implication be readily drawn from the language of the statutes, or their legislative history.

In determining whether the Webb-Pomerene Act curtailed the then existing authority of the United States to bring antitrust suits, it is important to consider what that Act did not do, as well as what it did. True, it exempted from the antitrust laws some, but not all, acts which would otherwise have been violations. But while it empowered the Commission to investigate, recommend and report, it gave the Commission no authority to make any order or impose any prohibition or restraint, or make any binding adjudication with respect to these violations.

This is in marked contrast to the Commission's power to issue cease and desist orders with respect to violations of § 5 of the Federal Trade Commission Act, as amended, 15 U. S. C. § 45,[3] and with respect to violations of the Clayton Act, §§ 1, 3, 7, 8, 11, as amended, 15 U. S. C. §§ 13, 14, 18, 19, 21.[4] On the other hand, it is consonant with

---

[3] Section 5 of the Federal Trade Commission Act, as amended, 15 U. S. C. § 45, declares that "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce" are unlawful.

[4] Section 1 of the Clayton Act, 15 U. S. C. § 13, prohibits certain discriminations in price and services; § 3, 15 U. S. C. § 14, certain sales or leases where the purchaser is required to refrain from dealing with competitors of the seller; § 7, 15 U. S. C. § 18, certain acquisitions by corporations of stocks in other corporations; and § 8, 15

and closely related to another important function of the Commission, which from the beginning has had extensive powers to investigate and report on practices which concern or affect the enforcement of laws relating to trade and commerce, including the antitrust laws.[5] Such investigations by the Commission have never been deemed prerequisite to antitrust suits by the United States; and there is nothing to suggest that Congress, in authorizing the Commission to investigate export associations, intended to place such investigations on any different footing than others, which the Commission had already been authorized to conduct.

It is suggested that Congress could not have contemplated "concurrent jurisdiction" of the Commission and the courts, because of the inconvenience to suitors in not being afforded an opportunity to mend their ways by

U. S. C. § 19, certain interlocking directorates. Section 11, 15 U. S. C. § 21, confers on the Commission power to issue cease and desist orders with respect to violations of §§ 1, 3, 7 and 8.

[5] Section 6 (e) of the Federal Trade Commission Act, 15 U. S. C. § 46 (e), authorizes the Commission, in language comparable to that of § 5 of the Webb-Pomerene Act, "upon the application of the Attorney General to investigate and make recommendations for the readjustment of the business of any corporation alleged to be violating the antitrust Acts in order that the corporation may thereafter maintain its organization, management, and conduct of business in accordance with law." Section 6 further authorizes the Commission to investigate the organization, business, practices and management of any corporation engaged in interstate commerce; to require such corporations to file annual and special reports and answers to questions concerning such matters; to investigate the manner in which corporations, defendants in Sherman Act suits brought by the Government, have complied with the decrees, and to transmit to the Attorney General its "findings and recommendations"; to investigate and report, upon the direction of the President or Congress, the facts relating to any "violations of the antitrust Acts by any corporation"; to investigate trade conditions in foreign countries where trade practices may affect our foreign trade, and to report to Congress its recommendations.

following the Commission's recommendations. And petitioners urge that Congress could not have intended concurrent jurisdiction, since it explicitly provided for it when it so desired. Thus §§ 1, 3, 7, and 8 of the Clayton Act, as amended, 15 U. S. C. §§ 13, 14, 18, 19, may be enforced either by cease and desist orders of the Commission, § 11, 15 U. S. C. § 21, or by suits in equity instituted by the several district attorneys in their respective districts, under the direction of the Attorney General, § 15, 15 U. S. C. § 25.

This argument overlooks the fact that the Commission's authority is to investigate and recommend, not to restrain violations of the antitrust laws (save as they may incidentally be violations of other statutes, which the Commission may enforce). The Commission, by its investigations and recommendations, may render a useful service in bringing violations to the attention of the Department of Justice or by showing that resort to the courts is unnecessary, either because there has been no violation or because the associations have satisfactorily corrected their trade practices. But the Commission, under the Webb-Pomerene Act, does not enforce the antitrust laws; its powers are exhausted when it has referred its findings to the Attorney General. Indeed, the provisions for such reference are necessary not because the Commission has a primary jurisdiction, but only because it cannot itself enforce the antitrust laws. Further, there is no want of specific authority for the United States to enforce the antitrust laws; the violations here alleged are not violations of the Webb-Pomerene Act, but of the Sherman Act, and it is the latter which provides for suits to be brought by the United States.

But even if the case were one of concurrent jurisdiction, we cannot assume that there would be any unseemly conflict between the Commission and the Department of Justice. Congress has found no such objection to the

concurrent jurisdiction to enforce the provisions of the Clayton Act to which we have referred. The two agencies will seldom act simultaneously. There would be no occasion for an investigation by the Commission if the Attorney General had already procured the requisite evidence of violations and was ready to proceed with his suit, as is said to be the case here. And there is no basis for interpreting the statute as though it had been contrived to prevent hostile action rather than to encourage efficient cooperation between the Commission and the Department of Justice.

As we have said, the Webb-Pomerene Act's grant of power to the Commission would curtail the authority of the United States to conduct antitrust suits only if it were deemed to be an implied repeal *pro tanto* of § 4 of the Sherman Act. As we pointed out in *United States* v. *Borden Co., supra,* 198–199, 203–206, such repeals by implication are not favored. There we held that provisions of the Capper-Volstead Act, 7 U. S. C. §§ 291, 292, comparable to those of §§ 2 and 5 of the Webb-Pomerene Act, did not operate to restrict the authority of the United States to maintain suits for violation of the antitrust laws.

Sections 1 and 2 of the Capper-Volstead Act, c. 57, 42 Stat. 388, 7 U. S. C. §§ 291, 292, authorized collective marketing by members of agricultural cooperatives but empowered the Secretary of Agriculture to issue cease and desist orders, upon investigation and findings that any such cooperative associations monopolized or restrained interstate trade and commerce to such an extent that the prices of any agricultural products were thereby unduly enhanced. And the Act gave jurisdiction to the district courts to enforce the Secretary's orders.

This Court rejected the contention that the Capper-Volstead Act gave to the Secretary "exclusive jurisdiction" to determine in the first instance whether the acts of the

cooperatives were violations of the Sherman Act because they went beyond the immunity granted by the Capper-Volstead Act. And we held for the same reasons, which are controlling here, that neither the language nor the structure of the Capper-Volstead Act indicated a Congressional purpose to make the procedure by the Secretary, which it established, either a substitute for or a prerequisite to a suit by the United States under the Sherman Act. *A fortiori* no such purpose is to be inferred from the Webb-Pomerene Act, which has withheld from the Commission any authority to enforce the Sherman Act.

Petitioners appeal to the familiar principle that equity will not lend its aid to a plaintiff who has not first exhausted his administrative remedies. *Natural Gas Co.* v. *Slattery,* 302 U. S. 300, 310–311; *Myers* v. *Bethlehem Corp.,* 303 U. S. 41, 51, and n. 9, and cases cited. And especially they urge that the Government may not proceed with the prosecution of a Sherman Act case until the relevant issues have been submitted to and passed upon by an administrative tribunal established by the Government to determine those issues. See *United States* v. *Pacific & Arctic Co.,* 228 U. S. 87, 106–108. To this the answer is, as already indicated, that the only function of the Federal Trade Commission under § 5 of the Webb-Pomerene Act is to investigate, recommend and report. It can give no remedy. It can make no controlling finding of law or fact. Its recommendation need not be followed by any court or administrative or executive officer.

Thus the words of the Webb-Pomerene Act and its setting lend no support to petitioners' contention. And there is nothing in its legislative history to show a Congressional purpose to restrict the authority of the United States to maintain suits for every kind of violation of the antitrust laws. The precise problem presented by the present case was not referred to in the committee reports or the debates, except in a remark by Senator Pomerene, indicating that

the Act does not preclude suits by the United States before the Commission has made its investigation.[6] But the absence of more extended discussion of the matter is in itself persuasive evidence that there was no purpose to repeal any portion of § 4 of the Sherman Act. And Congress's clear purpose to insure continued and vigorous application of the antitrust laws to domestic restraints of trade, notwithstanding the Webb-Pomerene Act, is shown by the Committee Reports [7] as well as by statements of the sponsors of the legislation on the floors of Congress,[8] and is a strong indication that there was no thought of depriving the Attorney General of any of his powers to prosecute antitrust suits.

[6] In response to a question by Senator Weeks, that "assuming . . . that the conclusion of the commission might be altogether wise, what assurance has the commission that the Department of Justice may not take a different view and proceed against these combinations under the provisions of the Sherman Antitrust Act?", Senator Pomerene answered: "It might do that." 55 Cong. Rec. 2788.

[7] H. Rep. No. 1118, 64th Cong., 1st Sess., p. 3; S. Rep. No. 1056, 64th Cong., 2d Sess., pp. 3–4. See also H. Rep. No. 50, 65th Cong., 1st Sess., pp. 1, 3; S. Rep. No. 109, 65th Cong., 1st Sess., pp. 3–4; Federal Trade Commission, Report on Cooperation in American Export Trade, (1916) Vol. 1, p. 376, et seq.

[8] Senator Pomerene said, 56 Cong. Rec. 173: "It [the bill] does not repeal, it does not affect the Sherman law so far as it applies to domestic commerce. It strengthens the Sherman law and the Federal Trade Commission law, in so far as unfair practices are concerned, beyond territorial lines." And he also said: "this bill does not repeal the Sherman law," and that associations not remaining within the immunity granted by § 2 "violate the law of the land." (p. 172.) He said further that such an association "would be subject to the jurisdiction of the authorities of this country, including both the Federal Trade Commission and the Department of Justice." (p. 170.) Congressman Webb, in discussing the amendment to § 5, said that the language of the provisions of § 2 "is a perfect preservation of the Sherman law in all of its virility within the confines of this country," 56 Cong. Rec. 4724, and that associations straying beyond the confines of their immunity "are liable both under the Federal Trade Commission law and the Sherman antitrust law." 55 Cong. Rec. 3579.

We conclude that the United States was authorized to bring this suit, and that the Commission's powers conferred by § 5 of the Webb-Pomerene Act do not preclude the suit before the Commission has acted. The order of the district court is therefore

*Affirmed.*

MR. JUSTICE ROBERTS concurs in this opinion in respect of this Court's exercise of jurisdiction under § 262 of the Judicial Code. He dissents from the decision that the District Court had power to hear the cause in the absence of an investigation and recommendation by the Federal Trade Commission.