**BERESLAVSKY v. CAFFEY, United States District Judge.**

**No. 20618.**

Circuit Court of Appeals, Second Circuit.

May 7, 1947.

Pennie, Edmonds, Morton & Barrows, of New York City, for petitioner.

Herbert C. Smyth, Jr., of New York City, for respondent.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The judge erred in striking the jury demand, despite the fact that more

than ten days had elapsed from the service of the last pleading directed to the issues as made by the original complaint and amended answer. For, under that complaint, the plaintiff was not entitled to demand a jury, since the relief he then sought was exclusively "in equity," so that there was then no "issue triable of right by a jury." When, by amending his complaint, he abandoned his prayer for such "equitable" relief, he then, for the first time, was in a position to demand a jury, for only then did there come into being an issue "triable of right by a jury." He made his demand well within ten days thereafter.

◼ Defendant seems to suggest that the Rules have completely obliterated, for substantive as well as procedural purposes, the historic differences between "law" and "equity." We cannot agree.[1] Those who favor it should have in mind that such obliteration, as to substantive rules, might deprive us of the inestimably valuable flexibility and capacity for growth and adaption to newly emerging problems which the principles of equity have supplied in our legal system. The procedural merger is undoubtedly desirable. A transplanted civilian, however, has shown us the disadvantages of a system in which "law" and "equity" are fused not only as to procedure but also as to substantive rules;[2] and another writer has pointed to the danger that, if the courts are not watchful, the procedural fusion may cause a hardening of equity[3] in its substantive aspects. But our decision here involves no issue of "substantive" equity.[3a]

◼ We consider inapposite Clark v. Wooster, 119 U.S. 322, 328, 7 S.Ct. 217, 30 L.Ed. 392, and Rice & Adams Corporation v. Lathrop, 278 U.S. 509, 515, 49 S.Ct. 220, 73 L.Ed. 480. For, in each of those cases, the defendant—not the plaintiff—sought to have the action discontinued in equity after the patent had expired, although suit had been begun before that expiration; consequently, as the plaintiff had not elected to substitute a law action for his equity action, the court, which had originally obtained equity "jurisdiction," had discretion to retain such "jurisdiction." It is of no moment that we believe that trial by a jury of a patent suit is usually undesirable, since it is well settled that such a trial may be demanded where the sole claim is for money, if the demand be timely, as we hold it was here.[4]

---

[1] In Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176, the Court refused so to agree even as to one procedural matter.

[2] Pekelis, Legal Techniques and Political Ideologies, 41 Mich.Law R. (1943) 665, 689, 691. Pekelis writes: "If someone were compelled to explain the essence of civil law to a common lawyer in one sentence, he could perhaps say that civil law is what common law would have been if it had never known a court of chancery. * * * The picture of conflicting and coexisting jurisdictions is * * * inconceivable to a Latin or even a German lawyer, who believes in * * * the uncompromising and sometimes cruel unity of the legal order." See also Pekelis, Administrative Discretion and The Rule of Law, 10 Social Research (1943) 22.

Cf. Holdsworth, History of English Law, I (3d Ed. 1922) 449: "The Roman praetor urbanus administered both law and equity; and therefore it was easier to fuse the two systems: the Chancellor and the common law judges were distinct and often rival authorities. Thus Justinian could effect what the English Judicature Acts could not effect. He fused law and equity: they, for the most part, *only fused the courts which administered law and equity.*" (Emphasis added.)

[3] Emmerglick, A Century of The New Equity, 23 Tex.L.R. (1945) 244. He points, inter alia, to the fact that, after the procedural fusion in England, an English judge, sitting in the Chancery Division, said, "This Court is not a Court of conscience * * *". Telescriptor Syndicate Limited [1903] 2 Ch. 174, 195, 196.

Pound, The Decadence of Equity, 5 Col. L.Rev. (1905) 1, 25, 29, noted the enactment of the fusion statutes as one of the causes of equity's decadence. See also Stone (later Chief Justice Stone), Book Review, 18 Col.L.R. (1918) 97; cf. Bordwell, The Resurgence of Equity, 1 Un. of Chi. L. R. (1934) 741, 750.

[3a] The wording of the federal statute authorizing fusion can leave no doubt that it was not intended to affect "substantive" rights.

[4] Plaintiff's shift to a "law" action is here peculiarly justifiable, as the long delay, during which his patent expired, resulted from compliance with the suggestion of the Judge Advocate General. But we do not rest our decision on that ground.

There can be no doubt **of our** power in such a case to issue a writ of mandamus, as it is in aid of our appellate jurisdiction.[5]

The writ will issue directing the respondent to vacate the order striking the jury demand.

5 See 28 U.S.C.A. § 377; Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; U. S. Alkali Association v. U. S., 325 U.S. 196, 204, 65 S.Ct. 1120, 89 L.Ed. 1554; Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481; Ex parte Peterson, 253 U.S. 300, 305, 40 S.Ct. 543, 64 L.Ed. 919.