**In re Charles K. SEWELL, Petitioner.**

**No. 82–1125.**

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1982.

Decided Sept. 29, 1982.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1982.

Walter W. Christy, New Orleans, La. (Kullman, Lang, Inman & Bee, New Orleans, La., on brief), for petitioner.

Robert F. O'Brien, Haddonfield, N.J. (Tomar, Parks, Seliger, Simonoff & Adourian, Haddonfield, N.J., on brief) and James Y. Callear, Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Margery E. Lieber, Deputy Asst. Gen. Counsel for Special Litigation, Washington, D.C., on brief), for respondent.

Before BUTZNER, WIDENER and ERVIN, Circuit Judges.

BUTZNER, Circuit Judge:

Charles K. Sewell seeks a writ in the nature of mandamus or prohibition requiring the district court to dismiss with prejudice an action instituted against him by the Glass Bottle Blowers Association, its local chapter, and several of its members (the union). The National Labor Relations Board, intervenor, joins Sewell's request for the writ.

We conclude that the district court's interlocutory order denying Sewell's motion to dismiss may be reviewed by a petition for mandamus and that federal labor law preempts the state law on which the union bases its action. Prosecution of the union's action would infringe the exclusive jurisdiction of the Board to adjudicate violations of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), and the jurisdiction of this court to review bargaining orders issued by the Board. Consequently, a writ in the nature of mandamus is appropriate, and the union's action must be dismissed.

## I

For many years, employees of Sewell Plastics, Inc., have been represented by the union. In 1977 a petition to decertify the union as collective bargaining representa-

tive was filed with the Board's regional office. The union prevailed in the ensuing decertification election, and following resolution of objections filed by the company, the Board certified the union. The company, however, refused to bargain on the ground that its objections were improperly overruled and that certification was invalid. It stated that it would decline to bargain unless the Board's decision was judicially approved.

A complaint was issued on the union's charge that the company violated § 8(a)(5) of the Labor Act.[1] The Board found the complaint had merit and issued a bargaining order,[2] which this court subsequently enforced.[3]

After the Board's certification of the union, but before this court enforced the bargaining order, the union filed suit in a North Carolina state court against Charles K. Sewell, president of the company. Sewell removed the action to the district court on the basis of diversity and federal question jurisdiction.

The complaint contained two counts—one alleging wrongful interference with contractual relations, and the other charging Sewell with malice in preventing the union and the company from bargaining. Specifically, the complaint alleged that the Board had certified the union as the bargaining agent for employees at the Sewell Plastics plant in Charlotte, North Carolina, and that the union has both a statutory and a contractual duty to bargain collectively with the company. It also alleged that pursuant to § 8(a)(5) of the Act the company has a statutory duty to bargain with the union and that Sewell had prevented the company and the union from making a contract by committing the following acts:

a.) refusing to arrange on behalf of Sewell Plastics, Inc. a mutually convenient time and place for collective bargaining with [the union];

---

1. Section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), provides:

    (a) It shall be an unfair labor practice for an employer—
    (5) to refuse to bargain collectively with the representatives of his employees ....

2. *Sewell Plastics, Inc.,* 247 NLRB 236 (1980).

3. *NLRB v. Sewell Plastics, Inc.,* 642 F.2d 448 (4th Cir. 1981) (table).

b.) petitioning the NLRB on behalf of Sewell Plastics, Inc. to determine whether [the union] possesses the majority status requisite for participation in collective bargaining, despite the NLRB's recent certification of [the union] as the majority representative; [4]

c.) continuing to challenge, on behalf of Sewell Plastics, Inc., the majority status of [the union], despite the NLRB's reaffirmation of [the union's] majority status;

d.) refusing, in Sewell Plastics, Inc.'s name, to furnish [the union] with the names, addresses, and seniority status of employees at the Charlotte plant.[5]

The complaint also alleged that Sewell acted against the best interests of the company because he subjected it to potential penalties for violating § 8(a)(5) of the Act.

The complaint charges that the union and the local chapter have suffered the following harm:

a.) inability to perform their duty to Sewell Plastics, Inc. employees to bargain collectively with Sewell Plastics, Inc. on their behalf;

b.) administrative and legal expenses connected with their as-yet-unsuccessful attempts to engage in collective bargaining with Sewell Plastics, Inc.;

c.) loss of union dues normally deducted from the wages of Sewell Plastics, Inc. employees at the Charlotte plant.

It also alleges that the employees have suffered the following harm:

a.) loss of increased wages similar to those collectively bargained by [the union] on behalf of other similarly situated employees within the same geographical area;

b.) loss of other improved terms and conditions of employment similar to those collectively bargained by [the union] on behalf of other similarly situated employees within the same geographical area.

The complaint sought damages from Sewell for the union in the amount of lost union dues and administrative and legal expenses. It sought damages in favor of the employees for the amount of wages and benefits lost due to Sewell's wrongful acts. It also sought punitive damages in the amount of $10,000.

Sewell moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The district court denied the motion, concluding that the complaint stated a claim under North Carolina law for tortious interference with the formation of a contract. With respect to Sewell's claim that federal labor law preempted state law, the court ruled:

> The allegations of Plaintiffs' Complaint, if proven, would likewise bring Charles Sewell's conduct outside the area of exclusive jurisdiction of the National Labor Relations Board. Sewell's individual conduct as alleged is of the "outrageous" variety deemed by the U.S. Supreme Court in *Farmer v. Carpenters,* 430 U.S. 290 [97 S.Ct. 1056, 51 L.Ed.2d 338] (1977) to be outside the scope of the Board's exclusive jurisdiction. Although the Board might find Sewell Plastics, Inc. guilty of violating the National Labor Relations Act by failing to bargain in good faith, the Board does not have jurisdiction over Charles Sewell's individual conduct or jurisdiction to award punitive damages as requested in Plaintiffs' Complaint.[6]

---

**4.** Following the union's certification, the company filed a petition for a representation election. The petition was dismissed.

**5.** The union filed a charge alleging that the company violated § 8(a)(5) and (1) of the Act by failing to submit employee lists to the union. This charge was settled, the company agreeing to furnish the requested information provided the court of appeals enforced any subsequent bargaining order.

**6.** Another action brought by the union for tortious interference with a contract for refusal to bargain was dismissed on the grounds that federal law preempted state tort law. *See Glass Bottle Blowers Ass'n v. Certainteed Corp.,* 93 Lab.Cas. (CCH) ¶ 13,335 (M.D.Ga.1981).

## II

The first issue is whether the interlocutory order of the district court denying Sewell's motion to dismiss the union's complaint may appropriately be reviewed by a petition seeking relief in the nature of mandamus or prohibition pursuant to the All Writs Act, 28 U.S.C. § 1651(a).[7]

The union's complaint seeks recovery for Sewell's "continu[ed] . . . challenge on behalf of Sewell Plastics, Inc. [of] the majority status of [the union] despite the NLRB's reaffirmation of [the union's] majority status." This continued challenge took the form of a refusal to bargain following the Board's certification of the union. Although couched in terms of the district court's lack of jurisdiction, the central theme of Sewell's motion to dismiss the complaint is that the federal labor law preempted the state tort law on which the complaint relies.

Sewell and the Board contend that mandamus is necessary to remedy the district court's reliance on preempted state law to usurp the Board's exclusive primary jurisdiction to adjudicate the lawfulness of Sewell's conduct, as agent for the company, in refusing to bargain. The union contends that mandamus cannot be used as a substitute for interlocutory appeal merely because the district court might have erred in assuming jurisdiction over the cause of action based on state law. Both sides marshal precedent for their positions but are unable to cite any decision precisely on point.

Resolution of the parties' contentions depends on (1) our power to issue the writ and (2) if empowered, whether this is an appropriate petition for the exercise of our discretion. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).

■ An appellate court is authorized to issue a writ of mandamus in aid of its jurisdiction for the purpose "of confining an inferior court to a lawful exercise of its prescribed jurisdiction, or of compelling it to exercise its authority when it is its duty to do so." *Ex Parte Peru,* 318 U.S. 578, 583, 63 S.Ct. 793, 796, 87 L.Ed. 1014 (1943). Thus, we are empowered to issue the writ, but our discretion to do so is sharply circumscribed. "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." Moreover, the petitioner must show that he has "no other adequate means to attain the relief desired." *Allied Chemical Corp. v. Daiflon,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). A showing of simple error is insufficient. *Will v. United States,* 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967).

In *United States Alkali Ass'n v. United States,* 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945), the Supreme Court reviewed an interlocutory order of a district court denying a motion to dismiss a suit brought by the government under the antitrust statutes. Lacking statutory authority to review interlocutory orders, the Court referred to its discretionary power to grant writs of mandamus and prohibition. The Court reviewed the order because of an asserted conflict between the exercise of the district court's jurisdiction and that of an administrative agency said to be charged with the duty of enforcing the antitrust laws with respect to the underlying dispute. It noted that if the motion to dismiss were well founded, the district court's denial would thwart the asserted purpose of Congress. 325 U.S. at 203, 65 S.Ct. at 1125.

■ Similarly, if Sewell's preemption claim is well founded, its denial would thwart the purpose of Congress to obtain uniform application of the Labor Act by confiding primary jurisdiction in the Board. *See Garner v. Teamsters Union,* 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953). Sewell's petition raises the question of the Congress's allocation of jurisdiction between the district court and the Board.

---

**7.** 28 U.S.C. § 1651(a) provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Thus, we must determine whether the district court properly assumed jurisdiction under state law to subject a company official to litigation that seeks compensatory and punitive damages because he caused his company to pursue the procedures established by Congress for administrative determination and judicial review of the Board's certification of a union. Therefore, in accord with *United States Alkali Ass'n,* mandamus to review the district court's interlocutory order denying dismissal of the complaint is appropriate.

The requirement imposed by 28 U.S.C. § 1651(a)—the writ must be necessary or appropriate in aid of the court's jurisdiction—is also satisfied by a second aspect of this petition. The company's refusal to bargain was a prerequisite for judicial review of the Board's resolution of election challenges and certification of the union. *See Magnesium Casting Co. v. NLRB,* 401 U.S. 137, 139, 91 S.Ct. 599, 600, 27 L.Ed.2d 735 (1971).

Our review of Board orders will be encumbered if company officials are required to defend themselves against state tort claims because of their decision to challenge Board certification in this court. A threat of liability for taking the steps necessary for appellate consideration of Board orders inevitably will deter petitions for review. Preservation of our jurisdiction to enforce Board orders therefore justifies resort to mandamus for resolution of the claim that federal law has preempted state law on which the union bases its action.

Finally, we conclude that review of Sewell's preemption claim on appeal after entry of a final order will not afford him or the Board adequate relief. If the preemption claim is valid, the district court will have infringed the Board's primary jurisdiction in the labor relations field and our own jurisdiction to review orders of the Board. In this event, deferring determination of the validity of the preemption claim until the entry of a final order will subject both Sewell and the Board to the district court's usurpation of the Board's jurisdiction simply because Sewell followed the procedure Congress established in the Labor Act to obtain review of a Board certification decision.

Sewell and the Board have satisfied their burden of showing the propriety of mandamus to resolve the jurisdictional conflict presented by the petition. This in turn requires determination of the preemption claim.

### III

We assume, without deciding, that the district court correctly held that the complaint alleged a cause of action against Sewell under state law for tortious interference with the formation of a contract. But, as the district court correctly recognized, the alleged violation of state law is not dispositive. The critical issue is whether, in the factual context of this case, federal labor law has preempted the state law on which the union predicates its suit.

In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), the Court explained the general principles for determining whether federal labor law has preempted state law:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes. (footnote omitted)

The Court then directed that these principles must be implemented by both state and federal courts:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.... If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. 359 U.S. at 245, 79 S.Ct. at 779.

The Court has recognized that the principles set forth in *Garmon* cannot be applied inflexibly. In cases involving trespass, intentional infliction of mental distress, libel, violence, and threats of violence,[8] "the Court has allowed a state to enforce certain laws of general applicability even though aspects of the challenged conduct were arguably prohibited by § 8 of the NLRA." *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 194–95, 98 S.Ct. 1745, 1756, 56 L.Ed.2d 209 (1978). For the purpose of our decision, the most instructive of these cases is *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), on which both the district court and the union primarily rely.

In *Farmer,* the Court allowed a member to sue his union under state law for the intentional infliction of emotional distress. The Court observed that no provision of the Labor Act protects this "outrageous conduct." 430 U.S. at 302, 97 S.Ct. at 1064. The Court cautioned, however, that "[u]nion discrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle." 430 U.S. at 305, 97 S.Ct. at 1066. Consequently,

the Court vacated the judgment in favor of the complainant and remanded because the trial was tainted with evidence pertaining to discriminatory hiring. 430 U.S. at 306–07, 97 S.Ct. at 1066.

There can be no doubt that the state has an interest in redressing both types of harm—intentional infliction of emotional distress and discriminatory hiring—exemplified by *Farmer.* The Court, however, explained the dichotomy of its ruling by reiterating that "concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme." 430 U.S. at 305, 97 S.Ct. at 1066.

### IV

■■ Tested by the principles set forth in *Garmon,* 359 U.S. at 244–45, 79 S.Ct. at 779, and *Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066, the state law of tortious interference with contracts that the union seeks to apply to Sewell's conduct is preempted by the Labor Act. The gist of the union's complaint is that Sewell, acting on behalf of his company, refused to bargain, petitioned the NLRB on behalf of the company to determine whether the union possessed majority status despite certification of the union, continued to challenge the majority status of the union until the Board's order was judicially enforced, and refused to furnish the union information to which it was entitled. All of the company's conduct was subject to regulation by the Labor Act. Indeed, as we have chronicled in part I, this conduct was adjudicated to violate § 8(a)(5) by the Board and this court. State law which is invoked to redress conduct prohibited by § 8 of the Act falls squarely within *Garmon's* doctrine of preemption. *See* 359 U.S. at 244–45, 79 S.Ct. at 779. Moreover, Sewell's conduct does not fall within any of the exceptions to *Garmon,* which are cataloged in *Sears,* 436 U.S. at 195, 98 S.Ct. at 1756.

8. *See, e.g., Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *Automobile Workers v.* *Russell,* 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); *Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); *Construction Workers v. Laburnum Constr. Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954).

Other considerations also weigh heavily in favor of preemption. *Farmer* noted that a union's misconduct which violated the Act could not form the basis of outrageous conduct for purposes of state tort law. Therefore, contrary to the district court, we hold that an employer's violation of the Act cannot constitute outrageous conduct sufficient to invoke state law. Both "would undermine the pre-emption principle." *Farmer,* 430 U.S. at 305, 97 S.Ct. at 1066.

Also, Congress has structured the Act so that the only way an employer can invoke § 10 to obtain judicial review of a contested certification is to refuse to bargain and litigate the matter in a subsequent unfair labor practice proceeding under § 8(a)(5). *See Magnesium Casting Co. v. NLRB,* 401 U.S. 137, 139, 91 S.Ct. 599, 600, 27 L.Ed.2d 735 (1971). Moreover, Congress has set forth the scope of remedies available for a violation of § 8(a)(5). These remedies do not include punitive damages, *Republic Steel Corp. v. NLRB,* 311 U.S. 7, 10–13, 61 S.Ct. 77, 78–80, 85 L.Ed. 6 (1940), or compensatory relief, Ex-Cell-O Corp., 185 NLRB 107, 110 (1970). To permit a union to recover from company officials punitive and compensatory damages for refusing to bargain in violation of § 8(a)(5)—a refusal made necessary by the Act in order that the employer can contest certification in a court of appeals—would, in the words of *Farmer,* present a "realistic threat of interference with the federal regulatory scheme." 430 U.S. at 305, 97 S.Ct. at 1066.

It is of no moment that the union sued Sewell individually and alleged that he acted against the best interests of his company, without justification, and with malice. Section 2(2) of the Act defines an "employer" to include "any person acting as an agent of an employer. . . ." Whatever Sewell's motives, and whatever the effect of his conduct on the company and on the union and its members, the Board imputed his actions to the company when it adjudicated the § 8(a)(5) charge. Thus, for the purpose of the Board's proceedings, Sewell and the company were identical. When the Board decides that an act is prohibited by § 8, "the matter is at an end, and the States are ousted of all jurisdiction." *Garmon,* 359 U.S. at 245, 79 S.Ct. at 779.

We therefore conclude that federal labor law vested exclusive jurisdiction in the Board to adjudicate the controversy over the contest of certification and the company's asserted justification for refusing to bargain, subject to judicial review by this court. Consequently, federal law preempts state law pertaining to the same controversy. A federal district court cannot invoke preempted state law to reexamine the company official's conduct. The court "must defer to the exclusive competence of the . . . Board if the danger of state interference with national policy is to be averted." *Garmon,* 359 U.S. at 245, 79 S.Ct. at 779.

V

In sum, we hold that this action must be dismissed. Confident that the district court will act in accordance with this opinion, we will follow the procedure established by Chief Judge Parker in *United States v. United States District Court,* 238 F.2d 713, 723 (4th Cir. 1957). Accordingly, although Sewell and the Board are entitled to a writ of mandamus, the writ will not issue unless a further order is entered to that effect.

PETITION GRANTED.