**CANISTER CO. v. NATIONAL CAN CORP.**
**CANISTER CO., Inc. v. NATIONAL CAN CORP.**

Civ. Nos. 309, 365.

United States District Court
D. Delaware.

Feb. 20, 1951.

See also 96 F.Supp. 273.

John J. Morris, Jr., of Hering, Morris, James & Hitchens, of Wilmington, Del., Arthur C. Gillette and John J. Bracken, Jr., of Newark, N. J. and James Harte Levenson, of New York City, for plaintiffs.

William S. Potter and Richard F. Corroon, of Southerland, Berl & Potter, of Wilmington, Del., for defendant.

LEAHY, Chief Judge.

Defendant moves to strike plaintiffs' demand for jury. This is not a new matter in the instant case. 5 years after the complaint was filed, plaintiffs first moved for a jury trial on June 22, 1948. The motion was denied. D.C., 8 F.R.D. 408. Later, on January 29, 1949, plaintiffs filed a writing denominated "Waiver of Equitable Relief"; and again asked for a jury trial. This motion was denied on September 16, 1949 (unreported opinion). Plaintiffs then petitioned the Court of Appeals for a writ of mandamus to compel this court to grant trial by jury. The Court of Appeals denied the writ. Canister Co. v. Leahy, 3 Cir., 182 F. 2d 510. Subsequently, plaintiffs moved to amend their complaints by eliminating all prayers for equitable relief. I granted this motion on October 3, 1950. When the

amended complaints were filed, plaintiffs again asked for a jury trial. Defendant's motion to strike this demand brings the matter once again for determination. As this is the last time I intend to file any further written memorandum on the question of a jury trial in this case I shall state the summa of the situation.

The complaint in our CA 309 was filed on May 13, 1943 and in CA 365 on February 1, 1944. Thereafter, the proceedings were the same as if both causes had been consolidated and counsel for plaintiffs and defendant as well as the court have treated them, in essence, as CA 309. The complaint alleged breach of an oral contract whereby defendant agreed to manufacture and sell to plaintiffs certain sets of metal parts to be used by plaintiffs in the manufacture of fibre-body metal-end paint cans. The complaint asked for equitable relief by means of specific performance of the contract and damages for breach. Defendant denied making the contract; its affirmative defense was the New York statute of frauds. On November 23, 1943 I granted defendant's motion for trial of the separate issues of no contract and statute of frauds. I stated: " * * * the interest of the parties will best be served by ascertaining if we have a contract upon which an action may be maintained before we direct our attention to the large issues of breach and damages." D.C.Del., 3 F.R.D. 279, 280.

After a full trial of the issues, and on documentary proofs and the testimony of live witnesses, on November 17, 1945 I decided in plaintiffs' favor and held that the "question of damages will be determined at a later date". D.C.Del., 63 F.Supp. 361. On March 26, 1947 I entered a formal judgment against defendant in this matter. I found that a valid and binding contract had been made by the parties and had been repudiated by defendant. I retained jurisdiction "for the purpose of determining in further proceedings before this Court the question of damages in accordance with the findings and conclusions, as amended, and this decree."

The entire history of the litigation in this court demonstrates plaintiffs prosecuted and considered the action as a legal action at all times. They never showed any interest in equitable relief. I having once decided in plaintiffs' favor on November 17, 1945, plaintiffs' only remaining interest has been on the issue of damages. Plaintiffs argue that because the original complaint contained a prayer for specific performance the case was a suit in equity and remained so until the "Waiver of Equitable Relief" writing was filed. I think this argument of plaintiffs is without merit. The nature of the action should be determined from the history of the litigation and not from the attempted use of paper labels by the most recent attorneys on the scene. The litigation should be examined as it was regarded by the parties and their counsel; and by, since 1945 at least, the actual relief sought, i.e., damages. Plaintiffs' present counsel argue that by pointing to the label of "equitable relief" attached to the original complaint they indicate the nature of the claim sought by plaintiffs. *The basic reality is plaintiffs have prosecuted this case as a legal action for damages and not as an action for equitable relief.* The situation, here, is caused, in my opinion, by counsel who wish to ignore the past history of the litigation and to have what they consider their novel ideas impressed upon the case. The facts show that there are 211 docket entries in CA 309 and 178 in CA 365. Prior to November 23, 1943, less than 6 months after the filing of the complaint, after 4 motions had been argued and there had been a pretrial conference, the former attorney for plaintiff (former Federal Judge Hugh M. Morris) indicated that the issue raised by the pleadings was the amount of damages suffered by plaintiffs, and no statement was made as to the right to or desire for equitable relief. At that time I characterized the action, D.C.Del., 3 F.R.D. 279–280, as follows: "This action is one by a buyer against a seller for breach of contract for failure to complete the manufacture and delivery of metal fittings for fibre-body one-gallon cans in accordance with certain alleged contracts between the parties, whereunder plaintiff claims $10,000,000 damages. So far, four motions have been argued. * * * We are here concerned with a $10,000,000 law suit involving complex is-

sues of fact. *The parties have not sought a jury trial.*"

In fact, on November 17, 1945, after the trial of the separate issues, I filed my original findings of fact and conclusions of law in plaintiffs' favor and I found the contract between the parties to be executory and still in force. On November 17, 1945 plaintiffs were in a position to request equitable relief at once. The fact is, no request for such relief was made at that time, *or at any other time*. On the contrary, on November 20, 1945 plaintiffs' attorneys submitted to defendant's attorney a proposed form of order to be entered on my findings of fact and conclusions of law. This proposed order provided that each of the defenses raised by defendant at the trial of the separate issues, "be and hereby is overruled". That particular proposed form of order contained no provision for specific performance or any kind of equitable relief whatsoever. Obviously, this was because plaintiffs had no interest at all in equitable relief but looked solely to the recovery of damages. Thereafter, both parties filed various motions to amend my findings of fact and conclusions of law and, after argument, on February 5, 1946 I entered an order holding that the contract inter partes had terminated on January 3, 1944 by virtue of the cancellation of an outstanding government directive. On June 6, 1946 plaintiffs filed their motion for a further amendment of the findings of fact and conclusions of law or, in the alternative, for a new trial on the issue of what was the terminal date of the contract. On June 16, 1946 plaintiffs filed the affidavit of one Gwathmey (President of the Canister Company) in which he urged me to change my ruling that the contract had terminated on January 3, 1944. He said: "As amended, these findings [my findings] severely limit the scope of plaintiff's ultimate recovery and deprive it of its right to adequate compensation for damages incurred by reason of defendant's breach * * * the adjudication deprives plaintiffs of substantial damages to which they are justly entitled." Gwathmey said not one word about equitable relief. In fact, at the hearing on this particular motion plaintiffs, having changed counsel, were then represented by J. Howard Carter, Esq., of the New York bar. During the course of his argument, Mr. Carter said: "Now, this case is not disposed of. One phase of it is, to be sure, and we still have, as your Honor knows, the question of breach or the damages to be tried at some future date. I would assume eventually, and I know it is a fair assumption, that this case is going to the Circuit Court of Appeals one way or another, and when it does, and when it is argued up there, and when the Court gets through with it, we would like—I am speaking now for the plaintiffs, obviously—we would like a final judgment and a final end to the litigation. * * * As the matter stands now in trying this question of damages we are restricted to seven or eight or nine months, whatever it is. If your Honor amends it in accordance with the way we feel it should be, you would open up that field of damages. If the defendant felt aggrieved they could protect their record by appropriate exceptions and urge that point in the Circuit Court of Appeals, and it would decide it, as I say, once and for all; and I think just from an equitable approach that your Honor would not be doing the defendant an injustice to further amend your findings consistent with and in conformity with, I should say, what you found originally. The converse of that situation is if you do not, we are restricted on our proof of damages, and eventually we have to get up to the Circuit Court of Appeals, and we will go there anyhow; and if your Honor does not give us the relief we are requesting and eventually if the Circuit Court by any chance should rule against your Honor or reverse you, we are back down here again retrying these issues; and I could see where the litigation would not only be burdensome to the Court, but unduly burdensome from a financial angle to both litigants, and that we would like to avoid." After my ruling on the motion, plaintiffs went for the first time to the Court of Appeals on what was the terminal date of the contract. In the meantime, plaintiffs had again changed counsel; and in opposition to defendant's motion to dismiss the appeal on the ground that it was not an appealable order, Robert C. Mc-Cracken, Esq., of the Philadelphia bar, stat-

ed on plaintiffs' behalf his understanding of the nature of this litigation to the Court of Appeals as follows:

"Where in an action for damages for breach of a contract to manufacture, a separate trial is had under Rule 42(b) of the Federal Rules of Civil Procedure [28 U.S.C.] and a judgment is entered, which finally determines the validity and enforceability of the contract in suit, defines its terms and its commencement and termination dates, and finds the contract was repudiated by appellee before its termination date,

"(a) Is the judgment a final decision appealable under Section 128 of the Judicial Code (28 U.S.C. § 225 [1948 Revised Judicial Code, 28 U.S.C.A. § 1291]), and

"(b) Is the finality of the judgment destroyed by leaving the question of damages open for future determination in accordance with the findings and conclusions of the judgment?" Granting defendant's motion, the Court of Appeals dismissed plaintiffs' appeal on September 11, 1947. 3 Cir., 163 F.2d 683. The Court of Appeals likewise characterized the case as one of an action at law. It, 163 F.2d at page 683, wrote: "As stated by the learned District Judge [D.C.], 3 F.R.D. 279, the suit at bar 'is one by a buyer against a seller for breach of contract for failure to complete the manufacture and delivery of metal fittings for fibre-body one-gallon cans in accordance with certain alleged contracts between the parties, whereunder plaintiff claims $10,-000,000 damages.' The defendant in its answer denied the making of the pertinent contracts but asserted that if made, they were made in New York and were void under the New York statute of frauds. *The parties did not seek a jury trial in the court below but were content to try the case to the court."* (Emphasis supplied).

On June 22, 1948 plaintiffs filed motion for jury trial on the issue of damages pursuant to F.R. 39 (b). On this occasion, plaintiffs were represented by J. Edward Lumbard, Jr., Esq., of the New York bar. At that time Judge Lumbard stated: " * * * the equitable relief prayed for in the complaints has become moot, leaving only actions at law properly triable by a jury." I heard argument on this motion and denied the request for a jury. At that time, D.C. Del., 8 F.R.D. 408, 409, I said:

"Plaintiffs now ask for a jury trial on the matter of damages on the premise that by the passage of time the present action has been transformed from a suit in equity to an action at law for money damages. This is because one of the prayers for relief found in the complaint asked for a mandatory injunction that defendant be required to carry out and perform the contract. No such relief was ever pressed or granted. Plaintiffs have been represented by a series of eminent counsel and the case at bar has been in process of litigation for a period in excess of five and a half years. No one has ever asked for a jury trial. In the early stages of the case I had occasion to write: 'This action is one by a buyer against a seller for a breach of contract for failure', etc., and 'We are here concerned with a $10,000,000 law suit involving complex issues of fact. The parties have not sought a jury trial.' Later I issued Findings of Fact and Conclusions of Law.

"From the beginning I regarded this case as an action of law and it was so treated by all counsel. To take action under Rule 39(b) and grant a jury trial would, of course, be by an exercise of discretion. But an exercise of discretion contemplated by the rule must be based on circumstances warranting its exercise lest discretion become the mere arbitrary act of the Court. Plaintiffs' failure to ask for a jury trial for over five years cannot be excused or afford a basis for an exercise of discretion. Plaintiffs are too late."

The record of the litigation in this court, on file in the office of the Clerk, discloses that in these actions plaintiffs were interested solely in legal relief. The issues raised and litigated in the long history of this litigation have been legal issues. The request for damages for $10,000,000 was never considered by the parties as "incidental" to the prayer for equitable relief. Plaintiffs have never, formally or informally, moved for specific performance of the contract, or for any form of equitable relief, and so, therefore, I, as well as all other counsel for plaintiffs, have always characterized this case as a law suit.

It can be seen from the foregoing that three orders have been entered on the question of plaintiffs' right to jury trial, two in this court and one in the Court of Appeals. In my order of October 3, 1950, when I allowed plaintiffs to amend their complaints, I did not pass on whether plaintiffs would be entitled to trial by jury simply upon permitting the amendment to be filed. Nor did the Court of Appeals in Canister Co. v. Leahy, 3 Cir., 182 F.2d 510, 514, decide that plaintiffs would be entitled to a jury trial upon the mere filing of an amended complaint in the event I should allow such amendment.

It is my view that the latest opinion of the Court of Appeals requires me to make my own determination on whether plaintiffs are entitled to a jury trial under their amended complaints. The petition for a writ of mandamus was an attempt to modify my order of September 30, 1949, wherein I held that plaintiffs were not entitled to a trial by jury as a matter of right under the particular circumstances of this case and its past history. The Court of Appeals refused to issue the writ. Ineluctably it it follows, that Court did not approve plaintiffs' contention that the filing of a writing by them which they denominated as a "Waiver of Equitable Relief" entitled them to a trial by jury as of right. In its opinion the Court of Appeals noticed that the original complaints sought relief in equity, the formal prayers still asked it, and as yet no issue had been pleaded which is cognizable under Rule 38(b). The Court then observed that plaintiffs "must effect the necessary amendments to its [their] complaints before it can become entitled to assert a right to trial by jury. The guide post which must direct the court below in its determination as to whether jury trials are to be ordered has not yet been put into place; that signpost must lie in the face of the pleadings." I think a fair reading of the opinion of the Court of Appeals indicates that even if the "necessary amendments" to the complaints had been allowed and made, it would still be up to the nisi prius court to make its determination as to whether jury trials are to be ordered.

Plaintiffs argue, however, that simultaneously with the service and filing of the amended complaints they are entitled to a jury trial. They contend that whatever anyone may have thought of the nature of the original actions during the past history of this long litigation, the opinion of the Court of Appeals in the mandamus proceeding against me settles that the actions were in equity and not in law, and state that when the most recent amendments to the complaints were made the actions were converted into actions for money damages exclusively. At that moment, they argue, the right to demand a jury arose for the first time. Plaintiffs contend their position is supported by two cases, Bereslavsky v. Caffey, 2 Cir., 161 F.2d 499, 500, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355, and Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862, certiorari denied 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393. With this, plaintiffs rest.

In the Bereslavsky-Caffey case there was an orthodox complaint for patent infringement, injunctive relief, and damages under 35 U.S.C.A. § 70. Later and after a governmental request for a stay of the litigation had been withdrawn, the complaint was amended under § 67 to seek simply monetary relief. At this point, a jury was sought. Judge Caffey struck the demand for jury trial. On appeal, Judge Frank said: "When, by amending his complaint, he [plaintiff] abandoned his prayer for such 'equitable' relief, he then, for the first time, was in a position to demand a jury, for only then did there come into being an issue 'triable of right by a jury.' He made his demand well within ten days thereafter." A mere reading of that case will demonstrate at once that it presents a far different question from that which is created by the particular facts and circumstances which have grown up in the litigation which we have in our case at bar; and I shall not pause to discuss Judge Clark's comments on the Bereslavsky case as found in Bank Line v. United States, 2 Cir., 163 F.2d 133. While the Court of Appeals for our Circuit referred to the Bereslavsky cases, it did not say they controlled, here, the right to jury trial.

Recently, in our District Court in Reeves v. Pennsylvania Railroad, D.C.Del., 9 F.R. D. 487, 488, Judge Rodney said: "The au-

thorities are uniform that when a plaintiff has waived a jury trial and subsequently files an amendment to the complaint which does not change the nature of the case or introduce new issues, such amendment does not entitle the plaintiff to demand a jury trial as a matter of right and over objection, pursuant to Rule 38(b). I have found no case to the contrary."

As stated before, as early as November 17, 1945, after a full trial and a decision on the question of breach of contract in plaintiffs' favor and the rejection of the affirmative defense of the New York statute of frauds D.C., 63 F.Supp. 361, I specifically provided by order that: " * * * the foregoing separate issues having been determined, jurisdiction is retained of these actions for the purpose of determining in further proceedings before this Court the question of damages in accordance with the findings and conclusions, as amended, and this decree." Thus, in contra-distinction to the Bereslavsky cases, I find plaintiffs received notice almost 7 years ago that if they were successful—as they were—on the breach of contract and statute of fraud issues, I would then hold a separate trial on the legal issue of damages. Plaintiffs took no step whatsoever to secure a jury trial of that issue until 4½ years (June 1948) after they had notice that the legal issue of damages would be separately tried. It is clear to me plaintiffs' failure to seek a jury on the damage issue during that long period is tantamount to an election to have the single and remaining issue of monetary damage decided without a jury. Clearly, it is a far cry from the 10 day period one is required to follow under the Federal Rules for a jury trial. The record in this case shows beyond question that any equitable issue raised in the original complaint for specific performance has long been moot. On November 17, 1945 I filed my original findings of fact and conclusions of law. On February 5, 1946 I amended these findings and decided that the contract between the parties had terminated on January 3, 1944. Thus, no equitable relief by way of specific performance could have occurred after that date. This finding, I believe, as to the terminal date, is binding in these proceedings and must be the law of the case. The Court

of Appeals clearly recognized this in Canister Co. v. Leahy, 3 Cir., 182 F.2d 510, 512, where it said: "It is clear that if the order of the court below entered pursuant to its decision reported at 63 F.Supp. [at] page 361, presents a correct determination of the issues between Canister and National Can, the contract had indeed ceased to be executory and the issue of specific performance had become moot as early as January 3, 1944 when, as the court below found, the amendment to WPB Conservation Order M–81 terminated the contract * * *". The fact is inescapable, then, plaintiffs have had no right to specific performance for more than 6 years. The recent amendment to the complaint introduces no new issues into the case. They merely eliminated prayers for equitable relief which have become moot and which have been moot for many years.

Under the circumstances, as I have related them, and based on the records of this court and the Court of Appeals, I am unable to see how I can rule that plaintiffs are now entitled to a jury trial as a matter of law, and certainly from a review of those same circumstances I do not see how I could possibly hold that plaintiffs, in the face of objection, are entitled to trial by jury as a matter of discretion. The facts of this case make it sui generis with respect to the present motion; and therefore, I shall strike plaintiffs' demand for jury trial.