Rubin HUDSON, Edward Fant, individually and on behalf of others similarly situated, Plaintiffs-Appellants,

v.

FARMERS HOME ADMINISTRATION, et al., Defendants-Appellees.

No. 80–3801

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

Aug. 24, 1981.

Isaiah Madison, Greenville, Miss., for plaintiffs-appellants.

Eugene Raven Severens, Walthill, Neb., for amicus curiae Center for Rural Affairs, Inc.

John R. Hailman, Asst. U. S. Atty., Oxford, Miss., for defendants-appellees.

Before GEE, RUBIN and RANDALL, Circuit Judges.

GEE, Circuit Judge:

Appellants Rubin Hudson and Edward Fant are black farmers in northern Mississippi who, over the years, have each borrowed considerable sums from the Farmers Home Administration (FmHA).[1] Denied further loans, both filed this suit on behalf of themselves and a class composed of, essentially, small farmers and black farmers applying for FmHA loans. They allege three general complaints: discrimination in granting loans to black farmers, similar discrimination against small farmers, and failure of FmHA to follow certain statutory and regulatory requirements—chiefly those mandating special help and supervisory assistance to "limited resource applicants."

FmHA regulations provide in great detail a method for appealing such administrative decisions as appellants complain of here. See 7 C.F.R. §§ 1900.51 et seq. Mr. Fant made no use of these procedures whatever. Mr. Hudson followed them through their next-to-last stage, failing to exhaust the last, arguably, because FmHA officials gave him incorrect instructions regarding it. The court below seems to have assumed substantial compliance on his part, and we shall do likewise. It is conceded by Mr. Hudson, however, that in his administrative presentation and appeals he failed to present two of the three claims that he seeks to litigate here: discrimination against black farmers and failure by FmHA to follow correct procedures as to the "limited resource applicant" program. Hudson does not concede that he failed to exhaust

---

1. Appellee FmHA asserts, and Mr. Fant does not dispute, that between 1974 and 1979 he received 13 farm loans of various types from the local FmHA office and, at the time he filed suit, owed FmHA over half a million dollars. Mr. Hudson owed it substantial sums as well—apparently something over $70,000.00.

**336**

the small-farmer discrimination claim. The court below concluded, however, that the issue had not been fairly presented to FmHA. So concluding, it dismissed appellants' action for a failure to exhaust administrative remedies, specifically providing in its order that the dismissal was without prejudice to appellants' right to refile upon completion of the administrative process.

On appeal to us, appellants assert that exhaustion was not required because of two exceptions to the exhaustion requirement and that at least one of their present claims was exhausted: discrimination against small farmers.

■ Neither exception applies here: those asserted are agency action "clearly at odds with the specific language of the statute" and that "resort to the administrative process would have been futile." We have had recent occasion to consider the former. *McClendon v. Jackson Television, Inc.*, 603 F.2d 1174 (5th Cir. 1979); *see also Coca-Cola Co. v. FTC*, 475 F.2d 299 (5th Cir. 1973). As we there noted, the first exception is rarely applicable and requires for its applicability clear and egregious error by the administrator, that "of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error." *McClendon*, at 1177. Nothing of the sort is raised by appellants' claims that appellees failed to advise them individually of the limited resource loan program or to afford them a higher degree of special help and supervisory assistance than was furnished. These claims rest upon general and directory language in the applicable regulations.[2] Nor are we able to ascertain how the failure of the local FmHA officials to advise Mr. Hudson about the limited resource applicant program harmed him in any practical way. The very definition of an applicant who qualifies for such a program—which is in essence simply a loan at a subsidized interest rate, lower than the regular one—provides that "a limited resource applicant

must meet the eligibility requirements for a farm ownership or operating loan but, due to a low income, cannot pay the regular interest rate on such loans." 7 C.F.R. § 1941.4(g). The record indicates that Mr. Hudson's loan application was denied because, in the view of FmHA, he did not meet these threshold eligibility requirements. How he could have been harmed by the failure to advise him about a possible subsidized interest rate and special supervisory assistance available had he qualified for the loan is not apparent to us.

Finally, the inapplicability of the exception contended for to the circumstances presented here is readily apparent when they are compared to those that gave rise to the exception itself in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). There the National Labor Relations Board, refusing to conduct a vote, certified a bargaining unit containing both professional and non-professional employees in square contravention of Section 9(b)(1) of the National Labor Relations Act, providing "the Board *shall not*" confect such a mixed unit "unless a majority of such professional employees vote for inclusion in such unit." *Id.* at 188–9, 79 S.Ct. at 183–184. Such an act, amounting to defiance of a clear and specific statutory prohibition, is a far cry from what we see here. This exception does not apply; indeed, to hold it applicable to such minor delinquencies as Hudson advances would go far to set exhaustion requirements at naught.

■ Nor does the second exception contended for fare better, that resort to the administrative process would have been futile. This second contention seems to rest on the same factual basis as the first, the failure of the FmHA to advise Mr. Hudson about the "limited resource applicant" program. Since he did not know of the program, Hudson contends, he could not complain of not being advised about it and the administrative process was therefore futile.

---

2. "*E.g.*, County Office Assistants ordinarily will be responsible for receiving loan applications and giving preliminary explanation of services available through FmHA. An explanation of the types of assistance available should be given whenever it is not clear what type of loan or grant will meet the applicant's needs. 7 C.F.R. § 1910.3(c)."

There are several difficulties with this contention.

In the first place, as we observed above, we are unable to see how the failure to advise Mr. Hudson about credit terms and supervision available had he otherwise qualified for the loan could have been harmful to him. What harmed him was the denial of the loan on any terms whatever. In the second, appellant cites us to no authority, and we have found none, for the proposition that failure by a participant—especially a participant represented by an attorney, as Mr. Hudson was during this administrative process—to advance whatever claims he might derive from public laws and regulations open to the eyes of everyone is a basis for declaring the administrative process a futile one. The two cases from our circuit to which appellant refers us do little more in this regard than state the general proposition that "only those remedies which provide a real opportunity for adequate relief need be exhausted." *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978); *citing Hodges v. Callaway*, 499 F.2d 417, 420 (5th Cir. 1974). Neither case applies the "futility" exception; both require exhaustion. Generally speaking, the application of this exception has been limited to situations involving inadequacies or disabilities in the administrative agency or process itself: where the agency is moribund,[3] where it lacks power to grant an effective remedy,[4] where the agency is bound by adverse rule or precedent which it cannot alter, or perhaps where a settled course of adverse decision rendered another all but certain. *See generally*, 3 K. Davis, *Administrative Law Treatise* § 20.07 (1958), and the same section in the 1976 Supplement. Nothing of this general kind is apparent here, only a deficiency in Mr. Hudson's own administrative presentation. To hold that such a failing on the part of appellant and his counsel excuses exhaustion would be impractical and extreme. We decline to do so.

As for the assertion that administrative remedies have been exhausted as to one of appellant Hudson's three claims, deliberate discrimination against small farmers, that this is so is far from certain, and the lower court's conclusion that they have not been is arguably correct.[5] Even were it incorrect, however, that court acted properly in dismissing without prejudice all claims in what was at best a "mixed" complaint—one presenting both exhausted and unexhausted claims. We have so held in a somewhat different but related context, that of petitions for habeas corpus by state prisoners. *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978) (*en banc*).

As we noted above, none of appellant Fant's claims were exhausted; he disregarded the administrative appeals process entirely. Appellant Hudson concedes that two of his three claims were not presented administratively. It is the general rule that such unexhausted issues will not, in the absence of extraordinary circumstances not present here, be considered by the courts. *Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972); *see* Davis, *supra*, at § 20.06. Thus, whatever relief Mr. Fant might receive as a class member and whatever Mr. Hudson may have in any capacity turns on the disposition of one, arguably-exhausted issue.

We are unable to determine with any assurance from appellants' briefs what it is that they would have had the district court do in the circumstances presented. Only three possible dispositions by that court occur to us:

(1) to entertain all three claims advanced since at least one—we shall assume for present purposes—had been exhausted;

(2) to entertain the exhausted claim only, dismissing the others with or without prejudice; or

3. *Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926).

4. *United States Alkali Export Ass'n v. United States*, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945).

5. It must be conceded, however, that Hudson did complain generally at the administrative level that large and well-to-do farmers received loans while his was denied, thus raising something closely approaching this issue.

(3) to dismiss all claims without prejudice in order to permit full exhaustion.

■ Appellants seem to contend for the first course of action; while forthrightly conceding the presence of a majority of unexhausted claims in their action, they assert, without differentiation among their claims, that "Appellants are clearly entitled to judicial review as a matter of right, the administrative *process* having been exhausted" (emphasis added). We must reject such a focus on merely walking through the process, one which exalts form over substance and views administrative procedures as merely a corridor to be traversed on the way to the courthouse. Such an approach would be equally consistent with presenting one set of issues to the administrators and an entirely different one to the courts. In no sense whatever is this "exhaustion." Exhaustion contemplates that the real issues in controversy be presented to the administrator, that he be given the opportunity to apply his special skills and experience to them, that he be permitted to correct his own errors, and that resort be had to the courts only thereafter. To adopt the approach advanced by appellants would be to reduce administrative proceedings to mere charades. We decline to do so.

On the chance that appellants are contending for the second approach as well (or instead) we discuss it also, though it is difficult to see why appellants would present unexhausted claims if they did not wish the court to pass on them.[6] Though on our present assumptions it is not the case here, the situation may sometimes arise where claims are presented whose exhaustion is doubtful or disputed. What should the court do with such claims if it concludes that they were not exhausted? If it dismisses them with prejudice, the effect at the trial level is the same as if appellant had abandoned them; they will not be con-

sidered. We assume that appellants do not contend for this result. If, on the other hand, the court dismisses unexhausted claims without prejudice and goes on to consider exhausted ones on their merits, the stage is set for multiple, piecemeal appeals arising out of one fact situation, a most undesirable result from the standpoint of conserving limited judicial resources. Even so, there may be situations in which such a procedure might be an appropriate exercise of the court's discretion, and what we say here is not intended to disapprove of it in advance and in every case whatever.[7]

This brings us to the third course of action, that followed by the court here: dismissal without prejudice of all claims in a "mixed" complaint to permit complete exhaustion of all before proceeding on any. We approve this procedure as the proper course in the usual case. In addition to avoiding the deficiencies of the other possible courses of action, noted above, it gives effect to numerous positive values: the avoidance of piecemeal litigation, the husbanding of limited judicial resources, the consideration of all claims in context by each tribunal at one time. Moreover, though concerns of federalism are not presented here, a certain analogous deference, perhaps cognate with comity, is due the special competence, if not the status, of administrative bodies. Nor, in logic, do we perceive any unfairness in requiring one who insists on presenting an array of claims, exhausted and unexhausted, to the court, to first present them all in the tribunal whose decision he attacks before complaining of its decision elsewhere.

AFFIRMED.

---

6. The practical effect of this approach is, of course, always achievable by an appellant to the courts from an administrative ruling. He need do no more than advance exhausted issues only in his complaint, bringing none that were not clearly presented to the administrator.

7. Cases may be imagined, as one example, in which the appellant appears clearly entitled to prevail on an exhausted issue or issues ruling the case.