Barton LEIT, Plaintiff,

v.

REVLON, INC., and First UNUM Life Insurance Company, Defendants.

No. 97–8664–CIV.

United States District Court,
S.D. Florida,
West Palm Beach Division.

April 13, 1999.

Lawrence W.R. Metsch, Metsch & Metsch, Miami, FL, for Plaintiff.

Jeannine Cline Jacobson, Jay S. Blumenkopf, Kristina B. Pett, Proskauer Rose, Boca Raton, FL, for Defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion To Dismiss for Failure To State a Viable "ERISA" Claim and Alternative Motion for Summary Judgment.

UPON CONSIDERATION of the motions, responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

The facts as alleged in the Plaintiff's Amended Complaint are as follows: Defendant Revlon, Inc. ("Revlon") hired Plaintiff Barton Leit ("Leit") in September 1973. As part of Leit's employment package with Revlon, Leit, at his own expense, was insured by a long-term disability policy ("Policy"), which was part of an ERISA-qualified employee welfare benefit plan ("Plan") underwritten by Defendant First UNUM Life Insurance Company ("UNUM"). The Policy provided coverage up to 60% of Leit's base salary (subject to a maximum monthly benefit of $5,000) if the disability continued past 26 weeks, and continued to provide coverage as long as the disability continued up to and including Leit's 65th birthday. Leit paid all premiums for the Policy, and UNUM was required to pay benefits. Leit was enrolled in the Plan until his involuntary termination from Revlon, which occurred on January 10, 1986.

In September 1975, Leit visited Dr. Menegaz, a physician selected and paid for by Revlon. Leit advised Dr. Menegaz that he had been experiencing difficulties in balance and walking. At that time, Dr. Menegaz referred Leit to Dr. Edward Crane, an orthopedic surgeon, and to Dr. Shapiro, a neurologist, to whom Leit related his symptoms.

On May 17, 1976, Leit was admitted to Lenox Hill Hospital in New York City for diagnostic tests. On May 27, 1976, following an examination conducted by the Lenox Hill staff, Leit was diagnosed as "possibly" suffering from multiple sclerosis.

Between October 1976 and October 1979, Leit continued to experience difficulties walking and maintaining his balance. Further, he suffered numbness in his right leg. Between May 1981 and July 1984, Leit experienced increasing difficulties in walking and maintaining his balance. He also suffered increasing weakness, pain in his cervical spine, and depression.

On May 20, 1985, Leit met with John Scalice, Revlon's Senior Vice President, to tender his resignation because of his health problems. Leit further alleges that Scalice refused to accept Leit's resignation.

On August 27, 1985, Leit was treated by an orthopedic surgeon for severe back pain. The following month, he was treated by an ophthalmologist for severe headaches and vision problems. On October 24, 1985, he was treated for severe fatigue.

In March 1987, over a year after leaving Revlon, Leit moved to Florida where he continued to receive medical treatment from specialists not affiliated with Revlon for a variety of symptoms, including stress, fatigue, severe pain in his cervical column, severe back pain, severe headaches, worsening eye and vision problems, depression, leg cramps, high blood pressure, sore throats, bladder and other excretory problems, and chronic colitis.

In November 1994, a member of the faculty of the University of Miami School of Medicine determined that Leit had "most likely" been suffering from multiple sclerosis for twenty years, beginning while Leit was employed at Revlon. Finally, Leit will continue to suffer from multiple sclerosis in the future.

## I. Federal Rules of Civil Procedure, Rule 12(b)

As Leit properly notes in his Memorandum of Law, Rule 12(b) of the Federal Rules of Civil Procedure provides that a Motion To Dismiss, when coupled with materials beyond the scope of the pleading, may be treated as a Motion for Summary Judgment. Specifically, Rule 12(b) states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

The Defendants have raised matters outside of the pleading in their Motion To Dismiss for Failure To State a Viable "ERISA" Claim and Alternative Motion for Summary Judgment, and Plaintiff has responded to these matters. The Court shall address Defendants' Motions as one Motion for Summary Judgment.

## II. Summary Judgment Standard

The standard to be applied in reviewing a motion for summary judgment is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In other words, the

party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## III. Exhaustion of Administrative Remedies

As a threshold matter, Defendants argue that Leit's claims should be dismissed for failure to exhaust all administrative remedies under ERISA. The Court agrees.

■ While ERISA does not contain an explicit exhaustion requirement, it has been firmly-established through Eleventh Circuit precedent, as well as in ERISA's legislative history, that plaintiffs in administrative actions must exhaust all administrative remedies prior to filing a claim in federal court. *See Counts v. American General Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997); *Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *Mason v.*

*Continental Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (discussing legislative history of ERISA). However, district courts are afforded discretion to excuse plaintiffs from the exhaustion requirement, particularly in the case of futility or inadequacy of potential remedies. *See Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990).

By admission, Leit has not attempted to exhaust his administrative remedies. More specifically, Leit has not taken any efforts to seek formal administrative remedies regarding a claim for benefits under his employee welfare benefit plan. As a justification for his failure to seek such remedies, Leit states in his Amended Complaint that "(a) it would have been futile for him so to do, and/or (b) none exist[ ]." Plaintiff's Amended Complaint at 2.

■ When granted, the futility exception is generally applied to remedy "inadequacies or disabilities in the administrative agency or process itself." *Hudson v. Farmers Home Admin.,* 654 F.2d 334, 337 (5th Cir. Aug. 1981). In such cases, plaintiffs' prior fruitless efforts might indicate that no purpose would be served by requiring further exhaustion.

Leit's claim for an exception for futility is based on the following: (1) UNUM has found Leit to be disabled under a policy unrelated to this case; (2) UNUM is burdened by an inherent conflict of interest; and (3) UNUM has not been precluded from presenting Leit's medical and vocational records to independent experts. The Court is not convinced that Leit has established adequate criteria to demonstrate futility.

■ Upon recognizing his alleged disability, Leit failed to file a claim under his benefit plan. Instead, it appears that Leit ignored the procedural review provided for by the Policy, and instead has chosen to pursue his claim before this Court. Thus,

to permit Leit to maintain his ERISA action before this Court would be to undercut the Policy, as well as the purposes of, the administrative exhaustion requirement.

## IV. Failure To File Notice and Proof of Claim

█ The Defendants have also asserted that Leit's claim is now time-barred under the UNUM Plan. Again, the Court agrees.

To begin, Leit failed to comply with his Policy's notice requirement. Under the Policy's section entitled "Notice and Proof of Claim," the following requirements for notice are set forth: "Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as it is reasonably possible to do so." Defendant's Memo. of Law, Exhibit A at L–GPP–2. Assuming that Leit first became aware of his disability on March 28, 1995, *see* Plaintiff's Memo. of Law at 6, he was required to file a Notice of Claim by the end of April, 1995, or as soon as possible. However, by the date of Plaintiff's Amended Complaint in this case, no Notice of Claim had yet been filed.

In addition, Leit has failed to comply with his Policy's requirement for Proof of Claim. One of the requisite elements of a Proof of Claim is a statement of cause of disability. Leit implies that he was unable to satisfy this requirement for Proof of Claim prior to March 28, 1995, because he could not provide a precise cause for his disability until that time.

Specifically, in Plaintiff's Memorandum of Law, Leit asserts that "he did not have reason to believe that he had been disabled by multiple sclerosis prior to the termination of his employment by Revlon until March 28, 1995, when Dr. Sheremata so

found." [1] *Id.* However, at that point, Leit had a total of 270 days in which to file a Proof of Claim under his Policy. This period of time is calculated using the Policy's requirement that Proof of Claim be filed within 90 days after the Elimination Period, which is identified in the Policy as 180 days following the discovery of disability. However, as the Defendants' note and Leit fails to dispute, no Proof of Claim was ever filed.

In his Memorandum of Law, Leit claims that "at a minimum there exists a genuine issue of material fact, precluding the entry of summary judgment, concerning 'the time proof of claim is required.'" Plaintiff's Memo. of Law at 6. The Court cannot agree. Accordingly, summary judgment is appropriate in this case on the alternative ground that Leit's claim is time-barred.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment be, and the same is hereby, GRANTED.

---

1. Leit has attached two letters to his Memorandum of Law, each of which was written by Dr. William Sheremata, a member of the faculty of the University of Miami School of Medicine. In the letter dated March 28, 1995, Dr. Sheremata concludes that Leit suffers from multiple sclerosis, and that he is "prepared to accept that [Leit] was symptomatic continuously [since 1979]." (Letter from William Sheremata, University of Miami School of Medicine, to Carl A. Salvati of 3/28/95, at 3).